UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**PATRICIA B.,**

**Plaintiff,**

      v.

**COMMISSIONER OF SOCIAL**
**SECURITY,**

**Defendant**.

Case No. 1:22-cv-00675-TPK

OPINION AND ORDER

## OPINION AND ORDER

      This case is again before the Court to consider a final decision of the Commissioner of Social Security which partially denied Plaintiff's application for social security disability benefits.  In an order filed on January 28, 2019, in Case No. 1:18-cv-00524, the Court remanded the case to the Commissioner for further proceedings, effectuating a stipulation of the parties, after which an ALJ issued a partially favorable decision, finding that Plaintiff's disability began on February 6, 2018, but not before.  That decision was also appealed, and in an order in Case No. 1:20-cv-00265 dated January 22, 2021 the Court again remanded the case.  Following that second remand, an Administrative Law Judge issued the same partially favorable decision on March 15, 2022, which constituted the Commissioner's third final decision.  After filing the complaint in this case, Plaintiff  moved for judgment on the pleadings (Doc. 11) and the Commissioner filed a similar motion (Doc. 13).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four**.**

### I.  BACKGROUND

      Plaintiff protectively filed her application for benefits on January 7, 2015, alleging disability since December 31, 2014.  After initial administrative denials of her claim, Plaintiff appeared at a hearing before an Administrative Law Judge on September 26, 2017. The ALJ issued an unfavorable decision on November 17, 2017.   As noted above, after an appeal, the Court remanded the case, and a second administrative hearing was held on October 10, 2019, followed by a partially favorable decision, another appeal, and another remand.

      The most recent hearing, at which Plaintiff and a vocational expert, Susan B. Gaudet, both testified, was held on September 10, 2021.  Following the hearing, the ALJ issued a partially favorable decision on March 15, 2022.  He found, first, that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020 , and that she had

not engaged in substantial gainful activity since her alleged onset date. Next, he determined that between the onset date and the date on which Plaintiff was determined to be disabled (February 6, 2018), she suffered from severe impairments including a right shoulder rotator cuff tear, impingement syndrome and tendinitis; left shoulder impingement syndrome and tendinitis; cervical degenerative disc disease with radiculopathy; chronic pain syndrome; arthritis; neuropathy, carpal tunnel syndrome; status post knee replacement; lumbar degenerative disc disease with radiculopathy; thoracic degenerative disc disease; and breast cancer. He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ concluded that during the relevant time frame (that is, prior to February 6, 2018), Plaintiff could perform a limited range of light work. She was limited to lifting ten pounds continuously and up to 11-25 pounds occasionally, could stand and walk for two hours in a workday but for only 30 minutes at a time, could sit for six hours but only four at a time, and needed to be able to change positions while staying on task. She was precluded from all overhead reaching and manipulative activities and could do them below shoulder level only frequently. The ALJ determined that Plaintiff could occasionally push and pull, frequently feel bilaterally, never climb ladders and scaffolds and not climb more than ten steps at a time, could occasionally balance on narrow or slippery surfaces, could occasionally crawl, could not work at unprotected heights or with dangerous machinery, tools, or chemicals, and could frequently operate motor vehicles. Finally, she could have no exposure to heavy vibratory equipment or machines or to temperature extremes. The ALJ found that with these limitations, Plaintiff still do her past relevant work as a policyholder information clerk. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time between her alleged onset date and February 5, 2018.

In her motion for judgment on the pleadings, Plaintiff raises four issues under the general heading of "The Commissioner's decision is not supported by substantial evidence and is based on errors of law and fact." They are:

1. The ALJ's RFC determination was not based on substantial evidence.

2. The ALJ failed to properly assess Plaintiff's limitations from severe and non-severe impairments in formulating the RFC.

3. The ALJ failed to assess the mental and non-exertional demands of Plaintiff's past relevant work, including work stressors. This omission undermined the determination at step 4 that Plaintiff was capable of performing her past relevant work.

4. The ALJ failed to support his determination regarding Plaintiff's established onset date of disability with substantial evidence.

Plaintiff's memorandum, Doc. 11.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

At the first administrative hearing, held in 2017, Plaintiff testified that she lived in a single family home and was able to climb the steps but with some difficulty.  She was able to drive and shop as needed, and she had obtained a bachelor's degree in business.  Plaintiff said she had worked as a customer service representative at a health insurance company and had also run a sales and installation service at a Sears store.  She had not worked since the end of 2014, and said she quit working due to a shoulder injury and also due to a number of medical conditions.

At the time of the first hearing, Plaintiff was being treated by Dr. Fine, a neurologist, by a primary care physician, by an orthopedist, by a cardiologist, and by a counselor.  She took medicine for acid reflux, irritable bowel syndrome, and high blood pressure, and had been prescribed medication for anxiety but had not started taking it.  She said that in a typical day, she slept ten or eleven hours, ate, did some chores like washing dishes and making the bed, and went grocery shopping.  She was able to socialize with family members and went to church regularly.  Plaintiff identified pain and anxiety as the primary reasons why she could no longer work, but she also said that she had numbness in her hands and feet and difficulty sustaining any activities without the need to sit or to lie down.

At the 2019 hearing, Plaintiff was first asked about her treatment for breast cancer.  She was still receiving treatment every three weeks for that disease.  Additionally, she said she had been using a cane recently and that her shoulder had been getting worse.  She also had suffered from fatigue, possibly as a result of taking various medications.  Plaintiff acknowledged that surgery had been recommended for both her neck and back but that she was afraid to go through with it.  Finally, she testified that due to her irritable bowel syndrome, she needed to be near a bathroom and to take several unscheduled bathroom breaks during the day, perhaps as many as four or five.

The third administrative hearing was held in 2021.  At that hearing, Plaintiff was asked to focus her testimony on the period prior to the date in 2018 on which she was found to be entitled to benefits.  She first stated that her treating physician for the last 20 years or so was Dr. Bassig, and she saw him about once a month.  One of the things he told her was that she needed to be able to change positions every ten minutes, and he also agreed with her that pain affected her ability to concentrate.  She reiterated the fact that even while she was working she had some bowel incontinence and issues with staying in the bathroom for too long.  She also missed about three days of work per month and was seeing a counselor as well.  All of her symptoms had gotten worse as time went on.

A medical expert, Dr. Stevens, who is an orthopedic surgeon, testified at the second

administrative hearing. He identified Plaintiff's primary impairments as neck pain, low back pain, right shoulder rotator cuff tendinitis, left shoulder tendinitis, bilateral carpel tunnel syndrome, and breast cancer. He said that her orthopedic issues did not rise to the level of severity needed to meet or equal a listed impairment. Prior to the diagnosis of breast cancer, Dr. Stevens said that Plaintiff could lift and carry up to ten pounds continuously and 25 pounds occasionally, could sit for four hours at a time and stand and walk for 30 to 60 minutes, could sit up to six hours in a workday and walk and stand for a total of two hours, could not reach overhead but could reach frequently on a level plane, could continuously handle and finger, could feel frequently, could push and pull occasionally, was limited even in climbing steps, could kneel and crouch continuously and crawl occasionally, should not be exposed to unprotected heights or machinery and moving parts, could operate a vehicle frequently, and should not be exposed to vibration or cold temperatures. When asked about limitations arising from irritable bowel syndrome, however, he said that was outside his area of expertise. Lastly, he said that the functional capacity he described related to her condition prior to February 6, 2018.

At the third hearing, the vocational testimony was as follows. The expert, Ms. Gaudet, was asked questions about a person who had Plaintiff's vocational profile and who could sit for six hours in a workday but for only four hours at a time, could stand and walk for two hours but only in 30-minute intervals, and who needed to be able to change position while staying on task. The ALJ also described a number of limitations in the ability to reach, handle, finger, feel, push, and pull, as well as some climbing restrictions and some environmental limitations. She responded that such a person could do Plaintiff's past work as a policy holder information clerk, and also other jobs like telephone operation clerk and charge account clerk, both of which are sedentary jobs. If, however, the person could only occasionally reach, handle, and finger with the dominant arm, that would be work-preclusive. The same would be true if the person were unable to flex and rotate the head or neck on an occasional basis.

### B. Medical Evidence

The record in this case is extremely voluminous. The Court will, therefore, focus its summary of the medical evidence on that portion which is highlighted in the parties' memoranda.

As noted above, Dr. Bassig was Plaintiff's primary care physician, and she was seeing him for pain in her neck and arms while she was still working. An examination in April of 2014 demonstrated numerous abnormalities and limitations in her range of motion. He diagnosed her with, among other impairments, cervical and lumbar disc disease and irritable bowel syndrome. Later that year, Plaintiff suffered a work-related injury to her right shoulder and also suffered from worsening carpal tunnel syndrome. By February of the following year, Plaintiff was reporting severe neck pain radiating to both shoulders and back pain exacerbated by prolonged sitting. An examination showed some neuropathy in her feet. During that year, she was given injections for her shoulder pain and for her back pain. Clinical studies also revealed the presence of abnormalities in both the cervical and lumbar spines. At some point, she was diagnosed with

a right shoulder rotator cuff tear as well as some abnormalities in the thoracic spine.

Records from 2016 and 2017 generally indicate that Plaintiff's reports of shoulder, neck, and back pain continued. She reported no improvement with conservative treatment. Examinations showed that she had sensory loss, motor weakness, and tenderness along the spine. She also was diagnosed with impingement syndrome of the right shoulder. Dr. McGrath, who was treating her for that condition, concluded that she had a 100% temporary total impairment.

Plaintiff began mental health counseling in 2016. She was diagnosed with adjustment disorder with depressed mood but her GAF was rated at 63. One of Plaintiff's children died in 2016 and that event added to her anxiety and depressive symptoms. From 2016 to 2018, multi-level spinal fusion surgery was recommended on several occasions but Plaintiff did not follow through with that recommendation.

### C. Opinion Evidence

In addition to the opinion offered by Dr. Stevens at the second administrative hearing, there are a number of other opinions in the record. For example, Dr. Miller conducted a consultative examination on May 7, 2015. Plaintiff reported that her problems included chronic neck and back pain, right shoulder pain, IBS, and carpal tunnel syndrome. On examination, she did have some limitation in the range of motion of her cervical and lumbar spines, but straight leg raising was negative and there was full range of motion of the hips and ankles. Her hand and finger dexterity as well as her grip strength were intact. Dr. Miller thought that Plaintiff was moderately limited in her ability to bend, carry, reach, push, pull, and move her hands repetitively. (Tr. 503-07). A psychological examination done the same day did not indicate any significant restrictions. (Tr. 510-13). Dr. Gosy, who treated Plaintiff in 2015 for back pain, thought she could not stand or sit at work for more than two hours at a time. (Tr. 570).

Next, Dr. Fine, Plaintiff's treating neurologist, stated, in a letter dated October 16, 2015, that Plaintiff was disabled from her current employment until her problems (which he listed as radiculopathy, pain and fatigue, depression, and "over weight") were better controlled. He pointed out that her current job did not allow her to stand and stretch her neck and back muscles. (Tr. 598).

Dr. Bassig, the treating primary care physician, completed a physical residual functional capacity questionnaire on February 6, 2018. He said that he was seeing Plaintiff every two to three months for a number of medical conditions and that she suffered from neck and low back pain, shoulder pain, diarrhea, dizziness, and stress. He also noted that depression and anxiety were contributing to her symptoms. Dr. Bassig believed that Plaintiff's pain would constantly interfere with her concentration and attention, that she could sit for only ten minutes at a time and stand for the same amount of time, all for less than two hours per day, that she needed to change positions at will, that her legs had to be elevated while sitting, and that she would miss four or more days of work per month. (Tr. 2508-12). In August, 2018, he completed a second such form, this time stating that Plaintiff could sit less than six hours per day and stand and walk

between two and six hours per day and that she would have to lie down for some unspecified period during the day. (Tr. 2250).

There is also a state agency reviewer's opinion in the record. On July 21, 2015, Dr. Bacalla concluded that Plaintiff could perform light work but with a number of postural and manipulative limitations. (Tr. 120-23). The state agency evaluations of Plaintiff's psychological conditions do not indicate a severe impairment or any significant limitations, however.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV. DISCUSSION

#### A. Residual Functional Capacity Finding

Plaintiff first argues that there was nothing in the record supporting several of the very specific physical limitations contained in the residual functional capacity finding. She adds that the ALJ failed to take her testimony into account that she would miss three days of work per month in order to attend medical appointments and also failed to factor into the functional

between two and six hours per day and that she would have to lie down for some unspecified period during the day. (Tr. 2250).

There is also a state agency reviewer's opinion in the record. On July 21, 2015, Dr. Bacalla concluded that Plaintiff could perform light work but with a number of postural and manipulative limitations. (Tr. 120-23). The state agency evaluations of Plaintiff's psychological conditions do not indicate a severe impairment or any significant limitations, however.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV. DISCUSSION

#### A. Residual Functional Capacity Finding

Plaintiff first argues that there was nothing in the record supporting several of the very specific physical limitations contained in the residual functional capacity finding. She adds that the ALJ failed to take her testimony into account that she would miss three days of work per month in order to attend medical appointments and also failed to factor into the functional

capacity finding the limitations caused by her nonsevere mental impairments.  In response, the Commissioner suggests that having a medical appointment does not equate to missing an entire day of work, and also argues that the ALJ adequately considered whether Plaintiff's mental impairments presented any meaningful limitations to her ability to do her past relevant work.

Plaintiff's first argument raises the question of whether there is substantial evidence to support the physical residual functional capacity finding.  That argument requires the Court to examine the ALJ's reasoning process as set out in the administrative decision.  In that decision, the ALJ determined that Plaintiff's statements concerning the extent of her symptoms were not entirely consistent with the evidence. (Tr. 2537).  The ALJ also considered the extensive medical records and explained how the findings in each set of records were accommodated by the residual functional capacity finding.  He then examined the opinion evidence, giving great weight to the testimony of Dr. Stevens and somewhat lesser weight to that of Dr. Miller, the consultative examiner.  Conversely, he gave little weight to the opinions of Drs. Fine and Bassig, noting particularly that Dr. Bassig's opinion was both contradicted by other opinions and that it was not supported by his own treatment notes.  It does not appear that Plaintiff contests this weighing of the opinion evidence.

The ALJ's residual functional capacity finding largely tracks the restrictions and limitations expressed by Dr. Stevens.  In fact, it is difficult to find any way in which the two significantly differ.  Any minor differences can be explained by the ALJ having given some weight to other opinions, such as those of Drs. Bassig and Fine, which support certain portions of the residual functional capacity finding.  Given the fact that the level of specificity adopted by the ALJ in his residual functional capacity finding is well-supported by medical opinions of record,  the Court finds no merit in this first contention.

The next question which Plaintiff raises concerns her need to attend medical appointments.  She asserts that she would need to take off work three days per month to go to see her doctors, and that such a level of absenteeism is inconsistent with employment.  She supports this argument with citations to cases such as *Bellinger v. Comm'r of Soc. Sec.*, 2018 WL 6716092, at *2 (D. Conn. Dec. 21, 2018), which noted that "'[a]bsenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded,'" *quoting Griffin v. Comm'r of Soc. Sec.*, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017).  The *Bellinger* case involved a claimant who needed to undergo weekly treatments lasting 2-3 hours, but the ALJ did not mention that restriction when determining if she could be gainfully employed.

In the responsive memorandum, the Commissioner points out that having to attend a medical appointment is not necessarily the same as missing an entire day of work, and cites this Court's decision in *Samantha R. v. Comm'r of Soc. Sec.*, 2021 WL 2820987 (W.D.N.Y. July 7, 2021) as authority for that proposition.  In that case, the Court noted that there was no evidence that the appointments which the claimant had to attend would consume an entire day.  Here, however, as Plaintiff argues in her reply memorandum, the vocational expert who testified at the second administrative hearing said that either coming in late or leaving early, for whatever

reason, would count as absenteeism, *see* Tr. 1102, so that the evidentiary flaw noted in *Samantha R.* is not present here.

Consistent with *Samantha R.*, this Court has held that "[s]ince medical visits do not necessarily take a whole day, and many can be scheduled outside working hours, more specific evidence is required to establish that a claimant's treatment regimen necessitates an intolerable number of full-day absences." *Daniel J. v. Comm'r of Soc. Sec.*, 2024 WL 242495, at *4 (W.D.N.Y. Jan. 23, 2024). There are numerous cases holding that in the absence of such evidence, the mere fact that a claimant may have to attend medical appointments cannot establish disability. But the Court agrees with Plaintiff that this case is different due to the vocational testimony which she cites. The ALJ did not discuss this testimony, perhaps because it was not repeated in the hearing over which he presided, but it is still part of the record, and nothing in the subsequent vocational testimony contradicts it. This issue alone requires a remand for additional consideration.

Given this determination, it is unnecessary to discuss whether the ALJ erred in not incorporating any mental limitations into his residual functional capacity finding. However, Plaintiff is correct that even nonsevere impairments must be accounted for in determining what work-related functions a claimant is able to perform, so on remand the ALJ should, at a minimum, make an explicit determination about whether there are any work-related mental limitations, even if they are mild, and whether they are consistent with the mental demands of Plaintiff's past work.

### B. Other Issues

Plaintiff's other claims challenge the ALJ's purported failure to determine the precise mental demands of her past relevant work, assert that he did not determine whether she could maintain the postures needed to do that work (such as sitting or standing for more than ten minutes without needing a break or being unable to move for 60 minutes at a time, even to stretch her muscles), and contend that substantial evidence did not support the finding that the onset date of Plaintiff's disability was February 6, 2018 rather than her alleged onset date in 2014. As to this last contention, the Court agrees with the Commissioner that the testimony of Dr. Stevens fully supported the ALJ's determination that, prior to and including February 5, 2018, Plaintiff had the residual functional capacity described by Dr. Stevens and largely adopted by the ALJ. It is also the case that the vocational expert testified that someone with that functional capacity could do Plaintiff's past work both as she performed it and as it was customarily performed. The latter conclusion supports a finding of "not disabled." "A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy." *Goodale v. Astrue*, 32 F. Supp. 3d 345, 362 (N.D.N.Y. 2012). And, again, with respect to the mental demands, that becomes relevant only if the ALJ determines that there are mental limitations which need to be factored into the residual functional capacity finding, something that can be more fully explored on remand. The Court will therefore forego any further discussion of these contentions.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 11), **DENIES** the Commissioner's motion (Doc. 13), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

/s/ **Terence P.  Kemp**
**United States Magistrate Judge**